UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AMANDA R. ELLIS,<br><br>            **Plaintiff,**<br>    **v.**<br><br>**PUBLIC SERVICE ELECTRIC & GAS, et al.,**<br><br>            **Defendants.** | Civ. No. 2:20-CV-17893 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.**

This is a disability discrimination action filed by Plaintiff Amanda Ellis against her former employer, Defendant Public Service Electric & Gas ("PSE&G"). Before the Court is PSE&G's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 69. Having reviewed the parties' submissions, the Court decides the motion without oral argument. See Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, PSE&G's motion for summary judgment is **DENIED**.

**I.     FACTUAL BACKGROUND**

Plaintiff began her employment with PSE&G on April 14, 2008. Final SOF ¶ 1.[1] From 2017 until her termination in April 2020, Plaintiff served as an inbound credit and collections representative ("Inbound Position" or "Inbound Representative"). *Id.* ¶¶ 8; 50. Inbound Representatives take telephone calls from PSE&G customers regarding payment arrangements. *Id.* ¶ 4. These calls come in rapidly—as soon as one call ends, another comes into the representative's headset immediately. *Id.* Inbound Representatives previously had a 45-second pause between calls, but the pause was removed in 2019. *Id.*

In September 2018, Plaintiff was diagnosed with Sjogren's disease, which is a chronic autoimmune disorder where the immune system attacks glands that make moisture in the eyes, mouth, and other parts of the body. *Id.* ¶¶ 9-10. Plaintiff suffered a "flareup" of the disease in August 2019, causing her to be unable to work from approximately August 5, 2019 to August 26, 2019. *Id.* ¶ 11. Plaintiff's medical team cleared her to return to work on September 3, 2019, but stated that she "need[ed] to have access to fluids & cough drops during her entire shift[,]" and that she "need[ed] breaks in between customer calls, at least 5 min[utes] when needed." *Id.* ¶¶ 12-13. Because of these restrictions (the "Requested Accommodation"), PSE&G required Plaintiff to see a PSE&G doctor upon her return. *Id.* ¶ 13. When she returned

---

[1] "Final SOF" refers to Defendant's Reply to Plaintiff's Response and Counterstatement of Facts to Defendant's Local Civil Rule 56.1(a) Statement of Undisputed Facts, ECF No. 86-2.

on September 3, 2019, PSE&G's doctor temporarily approved the Requested Accommodation until he could assess the effectiveness of Plaintiff's new medication at a later date. *Id.* ¶ 14. However, that same day, Plaintiff's supervisor sent her home because she was not permitted to return to work until PSE&G approved or denied the Requested Accommodation. *Id.* ¶ 15; Pl.'s Dep. 157:23-24.

On September 30, 2019, PSE&G's Accommodations Review Committee ("ARC") issued a letter to Plaintiff offering her an alternative accommodation ("Modified Accommodation"), which stated:

> You submitted a request to [ARC] to have a 5 minute break between calls, access to fluids and cough drops. As explained below, [your] request has been granted with modifications.
>
> ARC concluded that the medical information supports taking breaks, but not for 5 minutes after each call. However, ARC has approved, and the business can accommodate, splitting up your 15-minute breaks into multiple 5-minute breaks. You can use one such 5 minute break each hour. This accommodation will be in place for 6 months – through March 31, 2020. . . . If you need an extension beyond March 31, 2020, you need to email ARC . . . by March 15, 2020. If you have questions, please email them to [ARC], or contact your Labor Relations Manager, Elsa Kupratis[.]"

Def.'s Ex. 8; Final SOF ¶ 18.

After receiving this letter, Plaintiff spoke with Elsa Kupratis, PSE&G's Labor Relations Manager and a member of ARC. Final SOF ¶ 20; Pl.'s SOF ¶¶ 19-20.[2] Plaintiff testified that during this conversation, Kupratis advised Plaintiff to speak with her personal doctor about the Modified Accommodation. *Id.* However, the parties dispute whether Kupratis informed Plaintiff that her doctor was required to formally approve the Modified Accommodation before she could return to work. *Id.*

Plaintiff remained out of work until she was able to discuss the Modified Accommodation with her doctor in mid-October 2019. Final SOF ¶¶ 21, 22. Plaintiff testified that her doctor felt that the Modified Accommodation was fair and issued her a "return-to-work" letter for November 1, 2019. *Id.* ¶ 23. Plaintiff consequently returned to work and was put into a ten-day "refresher training," after which she would return to taking inbound credit and collection calls. *Id.* ¶ 25. However, on November 13, 2019—eight days into the ten-day training—Plaintiff received a call from Sedgwick, PSE&G's absence management vendor, who advised her to go home because her accommodation had not been approved. *Id.* ¶ 26.

---

[2] "Pl.'s SOF" refers to Plaintiff's Response and Counterstatement of Facts to Defendant's Local Civil Rule 56.1(a) Statement of Undisputed Facts, ECF No. 85-1.

Sedgwick advised Plaintiff to "remain out of work until PSE&G or Sedgwick call[ed] . . . to advise of next steps[.]" *Id.* ¶ 26.

On December 3, 2019, ARC issued another letter to Plaintiff, advising her that the Requested Accommodation had been denied. *Id.* ¶ 27. The letter stated that ARC had determined that Plaintiff was unable to perform the essential functions of her position, "with or without reasonable accommodations." Def.'s Ex. 4. The letter notified Plaintiff that job searches would be performed for 60 days, and that if a comparable job was found and Plaintiff did not accept it, or if no job was found commensurate with her skill set, the matter would be referred to local management. *Id.*

As a result of these job searches, PSE&G offered Plaintiff two teller positions. First, in December 2019, PSE&G offered Plaintiff a teller position in Jersey City, New Jersey. Final SOF ¶ 32. The parties agree that Plaintiff denied the position because it would entail a salary reduction. *Id.* However, Plaintiff asserts that she also declined the offer because she believed that she had an approved accommodation—the Modified Accommodation—and that due to the rapid pace of customers, such an accommodation would be unworkable in a teller position as there would not be enough time to hydrate. Pl.'s SOF ¶ 32; Pl.'s Ex. 11. Then, in March 2020, Plaintiff was offered a teller position in Elizabeth, New Jersey. Final SOF ¶ 33. Plaintiff accepted the offer on the condition that she would not be "locked into" the position under the relevant collective bargaining agreements. *Id.* ¶ 36. Kupratis construed Plaintiff's response as an acceptance and gave her a start date, but informed Plaintiff that she would indeed be "locked in" to the position for one year and that PSE&G would not need to consider her for a promotion during that time. *Id.* ¶¶ 38-39. ARC closed Plaintiff's case upon her acceptance. However, Plaintiff later rejected the position because she did not want to be "locked in" for 12 months. *Id.* ¶ 43.

Despite several warnings from PSE&G that Plaintiff's job search had ended and that she would be separated from the company if she denied the teller position in Elizabeth, Plaintiff solidified her decision to decline the position to Vito Viscomi, Manager of Operations at PSE&G's Call Center, on March 27, 2020. *Id.* ¶¶ 34-35, 44-45. Plaintiff cited risks regarding COVID-19 and seeing "100s of customers daily" in addition to not wanting to be "locked in" to the position for a year. *Id.* ¶ 45; Pl.'s Dep. Ex. 23. Viscomi advised Plaintiff that all tellers were working from home until further notice to avoid the risks associated with COVID-19, but Plaintiff affirmed her decision to decline the offer. Final SOF ¶¶ 46, 47. Plaintiff was ultimately terminated on April 9, 2020. *Id.* ¶¶ 48, 49. Plaintiff's termination letter recounted the details leading up to her separation from PSE&G. Def.'s Ex. 11. The letter stated in part that PSE&G could not accommodate Plaintiff's "permanent restriction of five (5) minute breaks between calls" for her Inbound Position, and that "[a]s a result, job searches were performed." *Id.* It then detailed Plaintiff's communications with Kupratis and Viscomi regarding her rejection of the two teller positions but made no mention of the Modified Accommodation. *Id.*

## II.   PROCEDURAL HISTORY

On February 12, 2020, Plaintiff filed a charge against PSE&G with the U.S. Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed the charge and issued a right to sue notice, which Plaintiff received on September 4, 2020. On December 3, 2020, Plaintiff filed the present action alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 to 12117, and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 *et seq*., against PSE&G.[3] After having an opportunity to develop the record through discovery, PSE&G moved for summary judgment on March 24, 2023. Mov. Br., ECF No. 69. After several extensions of the response deadline for good cause shown, Plaintiff filed her opposition brief on July 7, 2023. Opp. Br., ECF No. 85. PSE&G replied on July 28, 2023. Reply Br., ECF No. 86.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the Court construes all facts and inferences in the light most favorable to the non-moving party. *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). However, the Court may not make credibility determinations, weigh the evidence, or draw legitimate inferences from the facts at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact— that is, the "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Once the moving party meets this burden, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a *'genuine issue for trial'* and do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Furthermore, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson*, 477 U.S. at 248). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

## IV.   DISCUSSION

The Court first seeks to clarify the claims in Plaintiff's Complaint, which is comprised of the District of New Jersey's form complaint for employment discrimination cases. The form complaint allows for a plaintiff to simply check off boxes next to the types of

---

[3] Plaintiff also filed claims against her union that have since been dismissed.

discriminatory conduct alleged. Plaintiff checked off the following boxes: "Termination of my employment," "Failure to promote me," "Failure to accommodate my disability," "Unequal terms and conditions of my employment," and "Retaliation." Compl. III(A).

PSE&G challenges Plaintiff's failure to promote and unequal terms and conditions claims. PSE&G first notes that at her deposition, Plaintiff testified that she did not realize that the "Failure to promote me" box was checked. Mov. Br. 3 n.2. PSE&G also asserts that there are no allegations on the record supporting Plaintiff's unequal terms and conditions claim. *Id.* Plaintiff admits that she is not asserting a failure to promote claim, Pl.'s SOF ¶ 51, but does not address PSE&G's arguments regarding the unequal terms and conditions claim in her opposition brief. The Court also has not identified evidence in the record to support a *prima facie* case for the unequal terms and conditions claim. As such, Plaintiff's failure to promote and unequal terms and conditions claims are abandoned. *See Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 861 & n.9 (D.N.J. 2019) (noting that the record was devoid of evidence supporting element of discrimination claim and that plaintiff "further abandon[ed] her discrimination claim by failing to address it entirely in her opposition brief"); *accord Brenner v. Twp. of Moorestown*, No. CIV. 09-219, 2011 WL 1882394, at *11 (D.N.J. May 17, 2011).

Thus, only Plaintiff's failure to accommodate, termination, and retaliation claims under the ADA and the LAD remain.

## A.    Disability Discrimination Under the ADA and the LAD

The ADA prohibits employers from discriminating against its employees on "the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The New Jersey Law Against Discrimination ("LAD") similarly prohibits 'any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment.'"[4] *Hwaga v. RWJ Univ. Hosp.*, No. 317CV04125, 2019 WL 13277388, at *4 (D.N.J. Oct. 16, 2019) (quoting N.J.S.A. 10:5-4.1).

The three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to both ADA and LAD discrimination claims. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 848 (3d Cir. 2016) (applying framework to LAD claim); *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 667-68 (3d Cir. 1999) (applying framework to ADA claim). "The *McDonnell Douglas* framework requires that the plaintiff first establish a *prima facie* case of discrimination or retaliation." *Tourtellotte*, 636 F. App'x at 842. Generally, "to establish a prima facie case of disability discrimination under

---

[4] Because "New Jersey law generally tracks the [ADA and other federal discrimination statutes], and neither party points to any divergent aspect of New Jersey law that would not follow the outcome in this case[,]" the Court will review Plaintiff's ADA and LAD claims simultaneously. *Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021).

the ADA and the LAD, a plaintiff must first demonstrate that: (1) he is disabled within the meaning of the ADA and the LAD; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that he has suffered an otherwise adverse employment action because of his disability." *Hwaga*, 2019 WL 13277388, at *4 (citations omitted). However, "[t]he specific elements a *prima facie* case of disability discrimination vary . . . depending on the specific cause of action." *Tourtellotte*, 636 F. App'x at 848 (citing *Victor v. State*, 4 A.3d 126, 141-42 (N.J. 2010)). "If the plaintiff successfully meets the requirements of a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions." *Id.* at 842. "If the employer produces such a reason, the burden then shifts back to the plaintiff to prove that the employer's nonretaliatory or nondiscriminatory explanation is merely a pretext for the discrimination or retaliation." *Id.*

## B.   Failure to Accommodate Under the ADA and the LAD

"Both the ADA and the LAD require an employer that is a covered entity to provide reasonable accommodation to qualified individuals with disabilities who are employees, unless to do so would cause undue hardship." *Hwaga*, 2019 WL 13277388, at *5; *see* 42 U.S.C. § 12112(b)(5)(A); N.J.A.C. § 13:13-2.5(b).

Though courts have questioned whether a failure to accommodate claim can serve as a standalone claim, *Tourtellotte*, 636 F. App'x at 849 n.31, they have continued to require that plaintiffs show the "prima facie elements required in any disability discrimination claim" before pleading the elements for a reasonable accommodation claim. *Mejia v. CMC Steel US LLC*, No. 322CV01681, 2023 WL 3431216, at *4 (D.N.J. May 12, 2023); *see Fowler v. AT&T, Inc.*, 19 F.4th 292, 306 (3d Cir. 2021) (holding that a failure to accommodate claim may be viewed as a type of discrimination claim where the relevant adverse employment action is the employer's refusal to make reasonable accommodations for its employee's disabilities); *Victor*, 4 A.3d at 145 ("[T]he elements of the failure to accommodate claim appear as a subset of the second prong of the ordinary prima facie case [under the LAD].")." Accordingly, after showing an initial *prima facie* case of disability discrimination, a plaintiff asserting a failure to accommodate claim under the ADA and LAD must also establish "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Hwaga*, 2019 WL 13277388, at *5; *see Royster v. New Jersey State Police*, 152 A.3d 900, 910 (2017) (holding that the same proofs are implicated under both the LAD and the ADA).

### 1.   Whether the Parties Engaged in the Interactive Process in Good Faith

The parties first dispute the third element of Plaintiff's failure to accommodate claim, namely, whether PSE&G made a good faith effort to assist Plaintiff in seeking accommodations.

"In handling a disabled employee's request for a reasonable accommodation, both parties [employers and employees] have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 187 (3d Cir. 2009) (alteration in original) (citations and internal quotation marks omitted). The Third Circuit has acknowledged that in light of this duty, "it may be necessary for the covered [employer] to initiate an informal, interactive process with the qualified [employee] with a disability [in order to] identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." *Id.* (quoting 29 C.F.R. § 1630.2(o)(3)). New Jersey Courts have imposed a substantially similar duty under the LAD. *See Victor*, 4 A.3d at 148.

Where there is a dispute as to whether a party has fulfilled its obligation to participate in this process, the Third Circuit has cited approvingly to the Seventh Circuit, which has held that:

> Neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999) (alteration omitted) (quoting *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996)). Nevertheless, "where there is a genuine dispute about whether the employer acted in good faith, summary judgment will typically be precluded." *Id.* at 318.

In its moving brief, PSE&G asserts that it satisfied its duty to make a good faith effort to accommodate Plaintiff by offering her the Modified Accommodation and two teller positions, and that Plaintiff caused the breakdown in the interactive process by failing to communicate her acceptance of the Modified Accommodation and by rejecting the teller positions. *See* Mov. Br. 8-9, 12; Reply Br. 9-13. Plaintiff in turn argues that PSE&G caused the breakdown in the process because it did not advise Plaintiff that her doctor needed to approve the Modified Accommodation and in fact never mentioned the Modified Accommodation or followed up about it with Plaintiff again. Opp. Br. 16-19.

The Court finds that there is a genuine dispute of material fact as to whether PSE&G or Plaintiff failed to uphold their respective duties to engage in the interactive process in good faith.

a)    The Modified Accommodation

Primarily, disputes exist regarding (1) whether Plaintiff was required to inform PSE&G that her doctor approved the Modified Accommodation before returning to work; (2) whether Plaintiff actually communicated her acceptance of the Modified Accommodation to PSE&G; and (3) whether Plaintiff caused the breakdown in the interactive process by failing to ask PSE&G about the Modified Accommodation once the job searches began.

Regarding the first dispute, Plaintiff argues that the "record is devoid of any written or other notification advising Plaintiff [that] approval [of the Modified Accommodation] was necessary." Opp. Br. 19. Looking at ARC's September 30, 2019 letter to Plaintiff offering her the Modified Accommodation, there is no mention of any requirement that Plaintiff or her doctor formally "approve" the accommodation or contact anyone at PSE&G or Sedgwick before resuming work. Def.'s Ex. 8. Rather, the letter states that her "request has been granted with modifications" and that "ARC has approved, and the business can accommodate, splitting up [Plaintiff's] 15-minute breaks into multiple 5-minute breaks." *Id.* The letter continues to state that the "accommodation will be in place for 6 months" and closes by giving Plaintiff instructions for requesting an extension and providing her with information on who to contact with questions. *Id.*

However, PSE&G asserts that after Plaintiff received the September 30, 2019 letter from ARC, Kupratis spoke with Plaintiff separately and instructed her to have her doctor approve the Modified Accommodation before returning to work. Final SOF ¶ 20. In support of its argument, PSE&G points to language used by Plaintiff in her deposition. However, Plaintiff used several conflicting phrases throughout her testimony to describe her conversation with Kupratis. First, Plaintiff testified that Kupratis advised her to "speak to [her] doctor to see if [the Modified Accommodation] was okay[.]" Pl.'s Dep. 158:3-9. Then, she testified that Kupratis advised Plaintiff to have her doctor look at the Modified Accommodation to "see if it's suitable for [her] to return to work[.]" Pl.'s Dep. 163:15-17. Later, however, Plaintiff began using language suggesting that Kupratis instructed Plaintiff to have her doctor formally approve the Modified Accommodation in order to be released back to work. *See* Pl.'s Dep. 185:3-4 (testifying that Kupratis "requested that [Plaintiff's] doctor approve [the Modified Accommodation] and if so, she c[ould] release [her] back to work"); 187:21-22 (testifying that Kupratis requested for Plaintiff to have her doctor "look over the accommodation" and that if her doctor "agreed to it," Kupratis could "release [her] back to work"). Notably, the parties do not point to—and the Court has not identified—any testimony from Kupratis regarding this conversation. As such, a genuine dispute of material fact exists regarding whether Plaintiff was instructed to inform PSE&G that her doctor approved the Modified Accommodation before returning to work.

Relatedly, a second dispute exists as to whether Plaintiff did in fact communicate her acceptance of the Modified Accommodation to PSE&G. A reasonable jury could find that Plaintiff showing up at her job and attending a training for several days sufficiently signaled to her employer that she accepted the Modified Accommodation and did not reject it through

silence, as PSE&G argues. Reply Br. 14. Additionally, Plaintiff testified that her doctor issued a return-to-work letter for November 1, 2019. Pl.'s Dep. 164:8-9. While such a letter was not produced by the parties, PSE&G's internal notes indicate that Plaintiff did inform Sedgwick on November 13, 2019—the day she was removed from the training—that her doctor cleared her to return to work on November 1, 2019. Pl.'s Ex. 7 ("EE advised that they had RTW full duty 11/01/2019"). As such, a reasonable jury could find that Plaintiff did sufficiently communicate her acceptance of the Modified Accommodation to PSE&G—either physically by attending the training or verbally to Sedgwick.

Lastly, PSE&G raises a third dispute and argues that Plaintiff failed to uphold her own side of the interactive process by failing to ask about the Modified Accommodation after PSE&G started the job searches and offered her the teller positions. Mov. Br. 9-10. PSE&G told Plaintiff twice—via the December 3, 2019 Letter and during an email conversation with Kupratis in March 2020—that the job searches were being performed because PSE&G could not support the Requested Accommodation. Pl.'s Exs. 8, 10; Pl.'s Dep. 185:22-186:10. Upon hearing this, Plaintiff reasonably could have inquired with PSE&G as to why the Modified Accommodation was no longer offered. As such, a reasonable jury could find that Plaintiff caused the breakdown in the interactive process by failing to take the initiative to ask PSE&G about the status of the Modified Accommodation.

Both the employee and the employer have a duty to engage in the interactive process. *See Taylor*, 184 F.3d at 315 (holding that the interactive process "requires the employer to take some initiative"); *Ellis v. Ethicon, Inc.*, No. CV 05-726, 2009 WL 10641983, at *5 (D.N.J. Nov. 13, 2009) (holding that an employer is not liable where the employee fails to provide the employer with information necessary to devise an appropriate accommodation or does not answer the employer's request for more detailed proposals). On the evidence presented here, "a reasonable jury could . . . conclude that either party violated the duty to engage with good faith in the interactive process. Because genuine issues of material fact exist on that issue, . . . . [a] fact-finder must settle that dispute." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 508 (3d Cir. 2010); *see also Gomez v. Con-Way Cent. Exp. Inc.*, No. CIV.A. 06-5352, 2009 WL 799243, at *9 (D.N.J. Mar. 24, 2009) (noting difficulties "inherent in definitively concluding that one party was completely blameless during the course of an interactive process that lasted over two years"). This is true particularly since the resolution of this dispute requires a determination of each party's state of mind.[5] *See Gomez*, 2009 WL 799243, at *9 ("Summary judgment should not ordinarily be granted when the action entails a determination of a state of mind such as bad faith." (citations, internal quotation marks, and alterations omitted)).

---

[5] For these reasons, PSE&G's argument that Plaintiff was acting in bad faith by requesting an accommodation that she did not need, Reply Br. 3, must also be reserved for the factfinder.

b)     The Teller Positions

Separately, a genuine issue of material fact exists as to whether the two teller positions offered to Plaintiff were reasonable accommodations under the ADA and LAD. Mov. Br. 10-12. "[A]n employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation." *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 285 (3d Cir. 2001) (quoting EEOC Interpretive Guidance, 29 C.F.R. pt. 1630, App. 1630.2(o)); *see also Jones v. Aluminum Shapes, Inc.*, 772 A.2d 34, 43 (N.J. App. Div. 2001). PSE&G argues that because there was no evidence of any other more highly paid jobs for which Plaintiff was qualified available, the teller positions were reasonable accommodations even though they entailed a reduction in salary. Mov. Br. 11. Refuting PSE&G's assertion, Plaintiff contends that there was evidence of a more highly paid job available, and thus, she was not required to accept the teller positions. Opp. Br. 20-21.

Plaintiff cites to an email chain between Kupratis, Viscomi, and PSE&G's Director of Customer Support Eric Martinez to argue that PSE&G could have reasonably accommodated her by moving her to an outbound collections position. In the email, Kupratis asks Viscomi and Martinez whether PSE&G could support Plaintiff's Requested Accommodation. In response, Viscomi writes, "Is this worth a job search? We can support but it's a bit excessive…" Pl.'s Ex. 9. However, Viscomi replies again the next day and states, "I spoke to Christy, she's ok with us moving [Plaintiff] to Outbound collections permanently." *Id.* PSE&G diminishes Plaintiff's citation to this email as mere speculation regarding the availability of the position, Reply Br. 8 n.2, and suggests that the outbound position was ultimately not available to Plaintiff by citing to a subsequent email from Viscomi informing Sedgwick that "Unfortunately, we cannot accommodate this request[,]" Final SOF ¶ 27.[6]

A genuine issue of material fact exists as to whether an equivalent position was available to Plaintiff—and ultimately, whether the two teller positions offered to Plaintiff were reasonable accommodations under the ADA and LAD—because disputes still remain as to whether the outbound position offered a comparable salary to Plaintiff's Inbound Position, whether the duties of the outbound position allowed for sufficient breaks between customer calls, and why PSE&G was unable to offer the position to Plaintiff.

2.     *Whether Plaintiff Could have been Reasonably Accommodated*

The parties also dispute the fourth element of Plaintiff's failure to accommodate claim: whether Plaintiff could have been reasonably accommodated but for PSE&G's lack of good faith in the interactive process. PSE&G argues that a five-minute break between customer calls would have made it impossible for Plaintiff to take customer phone calls throughout the

---

[6] The exhibit cited by PSE&G—Ex. A to Suppl. Certif. of Sarah Wieselthier—does not appear to contain the referenced email from Viscomi to Sedgwick on November 12, 2019. *See* Final SOF ¶ 27. As such, the Court has not been able to review this email. PSE&G provides no additional context for the email.

day, which is the essential function of her job. Mov. Br. 6. Therefore, PSE&G argues that Plaintiff's Requested Accommodation was not reasonable, and that PSE&G was not required to accede to it. *Id.* However, Plaintiff does not suggest in its briefing that PSE&G was required to accept the Requested Accommodation and contends only that PSE&G could have supported the Requested Accommodation by transferring her to an outbound role. Opp. Br. 19-20. However, as discussed *supra*, whether such an outbound role was available to Plaintiff presents a genuine issue of material fact reserved for the factfinder. Further, there appears to be no dispute that Plaintiff could have also been reasonably accommodated with the Modified Accommodation. *See* Reply Br. 10. As such, PSE&G's argument regarding whether the Requested Accommodation was reasonable appears to be irrelevant at this juncture.

### C.   Plaintiff's Discrimination & Retaliation Claims

Lastly, PSE&G challenges Plaintiff's termination and retaliation claims. Specifically, PSE&G asserts that under the *McDonnell Douglas* burden-shifting framework, both of Plaintiff's claims fail as a matter of law because "Plaintiff was terminated from her employment at PSE&G for the legitimate, nondiscriminatory, and nonretaliatory reason that she rejected every reasonable accommodation of her disability that the Company offered her." Mov. Br. 16. As such, PSE&G argues that "[e]ven assuming Plaintiff could make out a *prima facie* case of discrimination or retaliation, she could not possibly meet her ultimate burden of proving PSE&G acted with discriminatory or retaliatory motive."[7] Mov. Br. 18.

To defeat summary judgment at the pretext stage under the *McDonnell Douglas* framework, Plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citation and internal quotation marks omitted). Viewing the evidence in the light most favorable to Plaintiff, a reasonable factfinder could disbelieve PSE&G's asserted reason for Plaintiff's termination. As noted *supra*, genuine disputes of material fact exist as to whether Plaintiff rejected the Modified Accommodation and whether the teller positions offered to her were reasonable accommodations. As such, Plaintiff has defeated summary judgment at the pretext stage.

---

[7] The Court questions whether Plaintiff has established a *prima facie* case of retaliation. To make such a showing, a plaintiff must establish "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (citations and internal quotation marks omitted); *see also Maddox v. City of Newark*, 50 F. Supp. 3d 606, 622 (D.N.J. 2014) (similar elements under the LAD). However, because both parties have assumed that Plaintiff has met her burden for purposes of this motion, this issue was not fully briefed. As such, this question should be re-examined before the case is submitted to the jury.

## V.    CONCLUSION

For the reasons set forth above, PSE&G's motion for summary judgment is **DENIED**. An appropriate Order shall follow.

WILLIAM J. MARTINI, U.S.D.J.

Date:  September 29, 2023